# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MASJID MUHAMMED- DCC, et al, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | C.A. No. 77-221 |
| ) | |
| PAUL KEVE et al, ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF RON HOSTERMAN

I, Ron Hosterman, having been duly sworn according to law do hereby state the following:

1. I make the following statements based upon my personal knowledge, and specialized training and experience as a Department of Correction employee. I have also spoken with Chaplain Pennell, who was very instrumental with putting together and operating systems in response to the initial lawsuit above-referenced. In addition, I have been working with Chris Klein, who in recent years has been dealing with religious dietary issues.

2. I have been employed with the Delaware Department of Correction since July 1, 1971. Currently, I am the Treatment Services Administrator at the Delaware Correctional Center (DCC) located in Smyrna, Delaware. I have held this position since 1991. My duties include supervision of counselors, Chaplin services, volunteers, and classification by direction of the Deputy Warden.

3. Inmates at DCC who desired to assume a name other than that name under which they were committed worked with the Chaplain's office to verify the change they sought. The Chaplain's office issued a certificate of name recognition, added the religious name to a cross-reference list containing religious and committed names, and notified the institution operational sections of the change and the need to list the religious name on memos, ID cards and mailing lists. This was during a period prior to any automated or computerized data base operations, so it was all on paper.

4. With the passage of the revised section 5901 of Title 10 Part IV Chapter 59, which abolished the common-law right of a prisoner to change his/her name, the use of those arrangements ceased, and newer staff have been instructed to utilize the committed name and SBI number as a point of reference or identification. That does not mean that there is never a use of a religious name in conversations with inmates or in written communication, but the general practice is to work with the committed name. Practices regarding adjustment of names following a court ordered name change are operated by the Department's central office.

5. I have no knowledge or information that Amir Fatir has sought and was granted a legal name change with the Court of Common Pleas as is mandated by 10 Del. C. §5901. Nor do I have any information or knowledge that Amir Fatir has been disciplined or punished for using his assumed name. In addition, I have no knowledge or information that Mr. Fatir has been deliberately denied the delivery of mail. The S.B.I. number is the controlling identifier in delivery of inmate mail.

6. When the lawsuit was settled, any prisoner who desired to have a non-pork diet was required to show a separate card when they went to chow to allow them to receive an alternate menu. (See Attachment 1).

7. Two operational changes led to a shift in strategy for food service. One was the end of the operation of a pig farm at Sussex Correctional Institution by prison industries, as uneconomical- it could not turn a profit in general commerce and could not beat the pricing of wholesalers competing for DOC business.

8. The other shift was to a department wide management of food services with an emphasis on portion control, cost accounting, and menu standardization. Consequently the Department discovered that a totally non-pork diet menu, using pork alternatives such as beef scrapple or chicken hot dogs, would allow more predictability in meeting daily demand.

9. I have not received any letters or other form of communication from Amir Fatir requesting assistance to petition the Court of Common Pleas for a legal name change. (See Attachment 2).

_____
Ron Hosterman

SWORN TO AND SUBSCRIBED before me this _____ day of_____, 2007.

_____
Notary