IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELWARE

| | | |
|---|---|---|
| MASJID MUHAMMED- DCC, et al, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. 77-221 |
| | ) | |
| PAUL KEVE et al, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT DEPARTMENT OF CORRECTION
ADMINISTRATORS'** *SUR-REPLY* **BRIEF**

The Department of Correction,[1] by and through undersigned counsel, submits this Sur-Reply to *Plaintiff's Reply Brief to Enforce Judgment* as follows:

1.    On or about August 16, 2007, Plaintiff filed a *Motion to Enforce Judgment* in the herein case. (D.I. 96). On or about September 24, 2007, the Court issued a Briefing Schedule. (D.I. 97). Defendants' Answering Brief was due on or before October 22, 2007. *Id.* Defendants filed an Answering Brief on October 22, 1997. (D.I. 101). On or about November 16, 2007, Plaintiff filed a Reply Brief. (D.I. 104). On or about January 25, 2008, the Court ordered the Defendants to file a Sur-Reply within ten (10) days of the Court's order. (D.I. 107). On or about January 30, 2008, Defendants filed a Motion for Enlargement of Time of fourteen (14) days or until on or before February 18,

---

[1] None of the Defendants in the herein case are presently employed by the Department of Correction. Upon checking with the DOC pension office no information was available on Defendants Paul Keve and Raymond Anderson. Defendant John Sullivan retired from the DOC on July 1, 1987; Defendant Walter Redman retired from the DOC on June 1, 1991and is deceased; Defendant George Pippin retired from the DOC on August 1, 2000; and Phyllis Patterson retired from the DOC on May 1, 1979 and is deceased.

2008 in which to file a Sur-Reply. Defendants' motion was granted on or about January 31, 2008. This is Defendants' Sur-Reply.

2. The Court's Order of January 25, 2008, ordered the Defendants to file a Sur-Reply brief responding to Plaintiff's Reply Brief and specifically addressing the following issues: "whether a state statute enacted after the fact whose purpose is to contravene a federal court order is unconstitutional; whether 10 *Del.C.* §5901 applies retroactively; and whether the April 9, 1980 final judgment order in this case is currently being enforced as to "II. With Respect to Plaintiff's Name Claims." (D.I. 75 ). These issues will be discussed first.

3. The first issue is whether a state statute enacted after the fact whose purpose is to contravene a federal court order is unconstitutional. This same question arose in a prior prison lawsuit, *Anderson v. Redman* which concerned overcrowded conditions and design capacity at the Delaware Correctional Center. ("DCC"). *Anderson v. Redman, et al.,* 429 F. Supp. 1105 (D. Del. 1977) ("*Anderson I"*). In *Anderson I*, convicted inmates and pretrial detainees filed a civil rights action seeking injunctive relief to alleviate overcrowded conditions at the DCC. *Id.* Following a seven day trial, the Court found that the State of Delaware failed to adhere to its own statutes and regulations and ordered relief in a two stage remedy. *Id.* at 1135. In the first stage, by March 15, 1977, the DCC inmate population had to be reduced to 600 the institution's emergency capacity. *Id.* On the second stage, by July 1, 1977 the DCC inmate population had to be reduced to the classification capacity of the institution as of that date. *Id.*

Two years later, on June 8, 1979 the Governor of Delaware signed into law House Bill 495 ("H.B. 495") which expressly referred to the District Court's Order mandating

capacity limits at the DCC.  H.B. 495 was designed to prevent the Court from enforcing limits on the inmate population in the State of Delaware based upon violations of Delaware statutory law. *Anderson v. Redman, et al.,* 480 F. Supp. 830, 831 (D. Del. 1979). ("*Anderson II).*  Defendants' Delaware Department of Corrections subsequently moved to vacate the Court's Order claiming that H.B. 495 had undercut the basis of that Order. *Id.* Plaintiffs on the other hand wanted to challenge the constitutionality of H.B. 495 under Article I, §11 of the Delaware Constitution. *Id.*  Plaintiffs claimed that H.B. 495 violated the section which read in part: "(I)n the construction of jails a proper regard shall be had to the health of prisoners."  Plaintiffs indicated they wanted to challenge H.B. 495 on this ground in State court and urged the Court to Stay its Order pending resolution of a State court action. *Id.* Defendants agreed that the District Court should not decide the challenge to H.B. 495 under Article I, §11 of the Delaware Constitution but urged the Court to vacate the Order. *Id.*

The District Court concluded that the State constitutional challenge to H.B. 495 posed by plaintiffs should properly be addressed by the Delaware State courts. *Id.* "It is well established that abstention by a federal court is proper where a State court determination of an unclear issue of State law might moot a federal constitutional issue or put the case in a different posture." *Id.* at 832. Aside from the presence of a federal constitutional issue, abstention is proper here so as to avoid the possibility of an erroneous decision of a State law issue which could have a serious and unnecessary effect upon the administration of the State's penal policies. *Id.*

Because Plaintiffs had already established their right to injunctive relief, the Court concluded the burden was on the Defendants and stayed the order. *Id.*  at 833.  Lastly,

the Court entered an order directing Plaintiffs to litigate all challenges to H.B. 495 based upon Article I, §11 of the Delaware Constitution in the Delaware courts and staying the Court's February, 1977 Order as amended until 90 days after the ultimate resolution of the State court litigation. *Id.* The 90 additional days was given in the event H.B. 495 was declared invalid as the Court concluded that it wasn't fair to subject the Defendants to contempt the moment a final State court decision was issued should the decisions be adverse to the Defendants. *Id.*

Applying the doctrine of abstention, the District Court concluded that it was for the Delaware judiciary to determine the validity of H.B. 495. *Id.* at 832. In the instant case, Defendants respectfully represent in this brief that 10 *Del.C.* §5901 is not in contravention with the April, 1980 final judgment of this Court for the reasons given herein.

4.    The second issue is whether 10 *Del. C.* §5901 is retroactive. The statute is not retroactive and therefore, not in contravention of the Court's Order. For Plaintiff's purposes, it is not applicable to him. It is a time honored principle that this Court "will not infer an intention to make an act retrospective," and that "to give an act a retrospective operation would be contrary to well settled principles of law applicable to the construction of statutes unless it be plainly and unmistakably so provided by the statute. *Keller v. Wilson & Co.,* 190 A. 115, 125 (Del.Supr.1936). Whether or not a statute is to be given a retroactive effect is a matter of legislative intent and Courts are extremely reluctant to arrive at such a construction unless the language of the statute permits of no doubt as to the meaning of the Legislature. *Miller v. Ellis,* 122 A. 2d 314 (Del. Super. 1956). In determining such intent, the courts have evolved a strict rule of

construction against a retrospective operation, and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it to operate prospectively only, and not retroactively. *Id* .at 316. If it is doubtful whether the statute or amendment was intended to operate retrospectively, the doubts should be resolved against such operation. *Id.*

In 1996, the Plaintiff was transferred to the State of Arizona pursuant to the Interstate Corrections Compact Agreement. (11 *Del. C.* §6570 et seq.) While Plaintiff was incarcerated in Arizona, the Delaware legislature passed H.B. 585, <u>Petition For Change of Name</u>, which contained a specific section concerning incarcerated individuals. (10 *Del. C.* §5901 (c)). Essentially, this section states the common law right to change one's name was abrogated as to individuals under the supervision of the Department of Correction. *Id.* These individuals may only effect a name change by petitioning the Court of Common Pleas. *Id.*

When Plaintiff returned to Delaware in December 2004, the receiving officer entered him into DACS's, the automated record keeping system using his SBI number as identification. (Affidavit Escherich at Exh. D-1 at ¶4). The SBI number corresponded with Sterling Hobbs the Plaintiff's committed name. *Id.* Subsequently, from that time on, Plaintiff's identification card as well as passes reflected his committed name. *Id.* This situation has been corrected as of February 11, 2008, when the Plaintiff was issued a new i.d. reflecting his current name and SBI number as indicated in DACS. *Id.* Most importantly, information in DACS has been corrected to reflect Amir Fatir. *Id.* The DOC will continue to use the Plaintiff's committed name for administrative record keeping. *Id.*

     5.     The third issue is whether the April 9, 1980 judgment is currently being enforced as to "II. With Respect to Plaintiff's Name Claims." The Plaintiff alleges that his First Amendment rights are being violated since he must petition the Court to seek a name change. (D.I. 104). The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. Const. amend. I. Under the First Amendment, where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. *Thomas v. Review Board, Ind. Empl. Sec. Div.* 450 U.S. 707, 717-18 (1980). If a plaintiff establishes that the state has placed such a burden on the exercise of his religion, then the state must justify its actions. *Id*

     Moreover, the First Amendment "protects an inmate's right to legal recognition of an adopted religious name," *Barrett v. Virginia,* 689 F.2d 498, 503 (4th Cir.1982), an inmate who has legally adopted a religious name has an interest in using his legal name with his commitment name. see *Fawaad v. Jones,* 81 F.3d 1084, 1086 (11th Cir. 1996). (assuming without deciding that the interest exists). At least in cases in which an inmate changes his name after he is incarcerated, a prison requirement that inmates use their committed names in conjunction with new religious names is an appropriate accommodation of the competing interests of the inmate and the prison. *See Fawaad,* 81 F.3d at 1087; *Malik v. Brown,* 71 F.3d 724, 729 (9th Cir. 1995). *Ali v. Stickman,* 206 Fed. Appx. 184 (3d Cir. 2006)

     On or about June 18, 1980, pursuant to the Court's Order, Defendants promulgated administrative regulation Section Number 1122-B. (See Regulations attached at Exh. D3-D4). In accordance with the Court's Order, these regulations, "established procedures for use of Muslim names by inmates, delivery of mail and food services to Islamic inmates in all institutions that practice the Islam faith." *Id.* To date, there is no evidence that these regulations have been revoked or superseded. Plaintiff

claims he adopted his Muslim name nearly thirty (30) years ago and has been identified as such in numerous lawsuits filed over the years  Additionally, his Muslim name was on his i.d, card while incarcerated at the DCC before his transfer to Arizona and also during his incarceration in Arizona.  For the exception of the last three years, Plaintiff has been addressed by his Muslim name, received mail in this name and has been given passes in this name.  Regrettably, upon his return to Delaware an error was made which has now been rectified.   (Escherich affidavit at Exh. D1-D2).

      Plaintiff further alleges that he suffered loss of mail because his mail is sent to him addressed in his Muslim name.  Plaintiff provides no evidence that he was denied any of his mail or that his mail was returned due to it being addressed in his Muslim name. Mailroom personnel first identify inmate mail by the SBI number and then the name. (Affidavit of David Hoofnagle at D5-D6 ).  The SBI's importance lies in the fact that no two inmates share the same SBI number; the same cannot be said about names. *Id.* The correct SBI number on the envelope avoids any unnecessary problems including delay in delivering the inmates' mail. *Id.* The mailroom has never refused to deliver mail to any inmate because of a name change, Muslim or otherwise. *Id.* Nor can DCC's mailroom supervisor recall any incident when Plaintiff's mail was refused due to being addressed in his Muslim name. *Id.*

      Lastly, Plaintiff alleges the "Court Order states that only the Plaintiffs in the herein case are authorized to inspect for pork content." (D.I. 104, ¶¶48-52).  This subject was fully explored in Defendants' Answering Brief. (D.I. 101 – Klein Affidavit) Briefly, according to the Court Order, a designated worker was chosen to oversee food products in order to determine whether any food contained pork. *Id.* at ¶3.  A few years later

around 1989, the DOC determined that it would no longer provide pork or pork by-products in *any* DOC facility. *Id.* Presently, after almost twenty years since pork was banished from the menu, the DOC in its bid specifications to food vendors affirms that pork products and/or pork extracts are not acceptable. *Id.* at ¶5. Since pork and/or its by-products have not been permitted at the DOC facilities for over twenty years, this issue is moot, resulting in no need for a designated worker to inspect food for pork.

6. The principle is well settled that a Court has inherent power to enforce its own judgment. *Baker v. Gotz,* 408 F.Supp. 238 (D. Del. 1976) *citing, Riverdale Cotton Mills v. Alabama and Georgia Mftr.Co.,* 198 U.S. 188, (1905); *Bartlett v. General Motors,* 127 A. 2d 470 (Del. Ch. 1956). Plaintiff alleges that Defendants have demonstrated civil contempt of the court's orders and that "sanctions are necessary to bring about compliance….." (D.I. 104; ¶¶14-22). Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order or to compensate the complainant for losses sustained. *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 448-449 (1911). In order to prevail on a motion for civil contempt, the plaintiff must prove three elements by clear and convincing evidence (1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order. *Wesley Jessen Corp., v. Bausch & Lomb, Inc.,* 235 F. Supp. 2d 370, 374. (D.Del. 2002); *Roe v. Operation Rescue,* 54 F. 3d 133, 137 (3d Cir. 1995). The Plaintiff alleges the Defendants were in violation of the Order and therefore, should be sanctioned. Defendants concede an error was made; however, there was no evil motive or

intent on Defendants' part. Moreover, Defendants are now in compliance making sanctions unnecessary.

      7.    A statutory enactment enjoys a presumption of validity. *Justice v. Gatchell,* 325 A. 2d 97, 102 (1974). Traditionally, courts practice self-restraint whenever it becomes engaged in testing the constitutionality of an act of the General Assembly. *Id.* Legislative acts should not be disturbed except in clear cases, and then only upon weighty considerations; a legislative enactment is cloaked invalidity is beyond doubt. *Klein v. National Pressure Cooker Co.,* 64 A. 2d 529 (1949). Every presumption is in favor of the validity of a legislative act and all doubts are resolved in its favor; and if the question of the reasonable necessity for regulation is fairly debatable, legislative judgment must be allowed to control. *State v. Hobson,* 83 A. 2d 846 (1951). There is a strong presumption of constitutionality attending a legislative enactment which, unless the evidence of unconstitutionality is clear and convincing, the court will be reluctant to ignore. *State v. Brown,* 195 A. 2d 379 (1963). One who challenges the constitutionality of a statute has the burden of overcoming the presumption of its validity. *Id.*

      Plaintiff alleges that §5901 is in violation of the Fourteenth Amendment Equal Protection Clause because "the overwhelming majority of incarcerated people who have changed their names are Muslims and Black." (D.I. 104, ¶8). The Equal Protection Clause mandates that all persons similarly situated shall be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). A plaintiff asserting an equal protection claim is required to offer proof that a racially discriminatory intent or purpose was a motivating factor in the challenged action. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265-66 (1977). In so doing, he must establish that he was similarly situated to

other inmates who received the treatment he desired, and that the discriminatory action in question was based on race, religion, national origin, poverty or some other constitutionally protected interest. *Daminano v. Florida Parole and Probation Comm.,* 785 F. 2d 929, 932-33 (11th Cir. 1986). (religion is inherently suspect classification for equal protection purposes). Religious discrimination entails the strict scrutiny standard, under which a law must be necessary to serve a compelling government interest to be found constitutional. *Cruz v. Beto,* 405 U.S. 319, 322 (1972)(extending this principle to the prison setting). While similarly situated persons shall be treated alike, it does not demand "that every religious sect or group within a prison however few in numbers must have identical facilities or personnel. *Id.* at 319. Prison officials must give inmates who adhere to a minority religion a "reasonable opportunity of pursuing their faith comparable to the opportunity afforded fellow prisoners who adhere to the conventional religious precepts. *Id.* at 322.

Prison administration presents unique difficulties. The burden imposed on inmates petitioning the court for a name change is outweighed by the administrative difficulties and confusion which confront prison officials in attempting to keep order of those inmates embracing their faith and changing their name. Knowing the committed and changed names of inmates in addition to keeping track of them is a compelling government interest. While Plaintiff may be correct in stating that the majority of prisoners changing their name are black and Muslim; §5901 includes every 'similarly situated' prison inmate who wishes to change his name. The Plaintiff does not cite to one example of how the statute favors one religious group over another or how it extends a privilege to another religious group but refuses to extend that privilege to Muslims.

The fact that a statute or regulation may affect a segment of the prison population more than another, does not make it discriminatory.

In the area of equal protection especially, courts have traditionally afforded legislative classifications a presumption of reasonableness and constitutionality where discrimination is not based upon race, color, religion, ancestry, or other inherently suspect classification requiring a more strict scrutiny. *Justice,* 325 A. 2d at 102.

Defendants therefore state in the herein motion, that 11 *Del.C.* §5901 is not in contravention of the April, 1980 Final Judgment; the statute is not retroactive and therefore, not applicable to Plaintiff's facts. Moreover, the Plaintiff was issued new identification reflecting his Muslim name and whose name has been entered into the DAC's system thus avoiding any further confusion in the future. Lastly, Defendants are in compliance with the Court's Order.

WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss this action as Defendants are in compliance with the Court's Order and Plaintiff has received the relief sought.

        **STATE OF DELAWARE**
        **DEPARTMENT OF JUSTICE**

        /s/ Ophelia M. Waters
        Ophelia M. Waters, I.D. No. 3879
        Deputy Attorney General
        820 North French Street, 6th Floor
        Wilmington, Delaware 19801
        (302) 577-8400
        ophelia.waters@state.de.us
        Attorney for Department of
        Correction

Dated: February 15, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2008, I electronically filed *Defendants' Sur-Reply* with the Clerk of Court using CM/ECF.  I hereby certify that on February 15, 2008, I have mailed by United States Postal Service, the document to the following non-registered participant(s):

Amir Fatir, Inmate
SBI No.: 137010
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE  19977

/s/ Ophelia M. Waters
Ophelia M. Waters, I.D#3879
Deputy Attorney General
Department of Justice
Carvel State Bldg., 6th Fl.,
820 North French Street,
Wilmington, Delaware 19801
(302)577-8400