## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MASJID MUHAMMAD-DCC, et al.,               )
                                           )
      Plaintiff,                           )
                                           )
        v.                               )    C.A. No. 77-221-SLR
                                           )
KEVE, et al.                               )
                                           )
      Defendants.                          )

**FILED**

FEB 27 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

$\mathcal{B}$ scanned

## PLAINTIFF'S REBUTTLE TO DEFENDANTS' SUR-REPLY

Plaintiff Amir Fatir, pro se, submits this Rebuttal to Defendants' Sur-Reply.

1.    The American system of justice is predicated on parties, especially attorneys who are officers of the court, being truthful, honest and candid in statements, evidence and arguments presented to the court.

2.    Regrettably, in Defendants' Sur-Reply to Plaintiff's Reply Brief to Enforce Judgment, Defendant's counsel presented false information, disinformation and outright lies in an overzealous effort to persuade the court to dismiss Plaintiff's motion and to sidestep a finding of contempt.

3. **Rule 3.3 Candor toward the tribunal** (Delaware Rules Annotated, Vol. II) states:

> (a) A lawyer shall not knowingly:
>
> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
>
> (3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the

lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter that the lawyer reasonably believes is false.

(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

(c) The duties stated in paragraph (a) and (b) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

4.      After quite clearly stating in both affidavit and brief that 10 Del C § 5901 applied to Plaintiff Defendants now claim that it was never retroactively applied to him. Defendants claim that it was a mere error, a kind of clerical error, which caused him to be forced to wear identification, carry passes, respond to and be called by his religiously offensive former slave name in violation of this court's clear order.

5.      Plaintiff's now claim "The statute is not retroactive and therefore, not in contravention of the Court's order. For Plaintiff's purposes, it is not applicable to him." (Sur-Reply, paragraph 4.) "When Plaintiff returned to Delaware in December 2004, the receiving officer entered him into DACS's, the automated record keeping system using

2

his SBI number as identification (affidavit Escherich at Exh. D-1 at ¶ 4). The SBI
number corresponded with Sterling Hobbs the Plaintiff's committed name."

6.      In point of fact, the SBI number corresponded with Amir Fatir and
Sterling Hobbs. Defendants deliberately chose to use Sterling Hobbs and refused to use
Amir Fatir. Defendants went so far as to send him a Xerox copy of § 5901 attached to his
grievance when he grieved their defiance of the court order. In two grievances (copies of
which were previously sent to the court) defendants cited § 5901 even after Plaintiff
apprised them of this court's decision and provided the case citation.

7.      In various letters to the prison administrators, Plaintiff requested that this
court's order be respected and that his name be acknowledged. In addition to the
aforementioned grievances, Plaintiff wrote Deputy Warden Betty Burris on April 24,
2007 and requested compliance with the court's order. He'd previously written about the
same issue to her and Warden Thomas Carroll before. In the April 24, 2007 letter he
wrote: "I wrote requesting tat you direct the appropriate officials to comply with the
federal court order that my name, Amir Fatir, be acknowledged and used. This right was
secured in Masjid Muhammad-DCC, et al., v. Keve, et al. 479 F. Supp. 1311 (case # 77-
221). I would request that my name be recognized on my I.D., building lists, visiting,
etc. as was the case for nearly 30 years."

Ms. Burris forwarded the request to Michael Little, Legal Services Administrator,
who said he lacked the "authority on how name changes are handled by the Department
of Corrections" and suggested that Plaintiff "contact Cindy Wright, DCC Records
Supervisor or Cathy Escherich, Director of Offender Records at central office in Dover."

He sent courtesy copies to Warden Carroll, Aaron Goldstein, Cindy Wright, Cathy Escherich and File."

Cindy Wright refused to make the change back to Amir Fatir absent a court order (see Cindy Wright's memo dated 7/17/2007). Fatir forwarded a copy of this court's order and Ms. Wright refused to make the change because he did not have a **common pleas court order** and repeated this to law library supervisor Tim Martin and then W-Building Sgt. Bamby Thomas.

Fatir wrote Cathleen S. Trainer of the U.S. Justice Department's Civil Rights Division seeking help in enforcing the federal court order and forwarded courtesy copies to Commissioner Carl Danberg, Warden Thomas Carroll, Aaron Goldstein, Cindy Wright and Cathy Escherich. Additionally, Plaintiff Fatir has sent various notifications (via certificate of service) to then Attorney General Danberg and Attorney General Biden of action he was taking action seeking enforcement of this court's order based upon DOC's retroactive application of § 5901.

It is therefore beyond dispute that defendants were aware that § 5901 was being retroactively applied to Plaintiff Fatir, and scores of Muslims. To argue that each application was "an error" would stretch credulity.

Plaintiff's counsel **defended** defendants' retroactive application of § 5901 to Plaintiff in her *Response to Plaintiff Amir Fatir's Motion to enforce Judgment*. She wrote, inter alia, "Fast forward to 2007, whereas Plaintiff purports to have this Honorable Court revisit its earlier decision and enforce its ruling on prison officials. In essence, Plaintiff is alleging that prison officials have violated his right to freely practice his chosen religion **by requiring him to use both his chosen religious name and the name under which he was committed.**" Defendants' counsel argued that "a prison

4

requirement that inmates use their committed names in conjunction with new religious

names is an appropriate accommodation of the competing interests of the inmate and the

prison." She continued, "However, it is also clear, Muslim inmates are not free to

disregard orders whenever a member of the staff fails to address them by their Muslim

names. Certainly, **an inmate may be disciplined if they disregard orders given by**

**staff.**" Counsel then reasoned that "Wearing a name tag in a prisoner's committed name

for identification purposes is appropriate."

In paragraph 17 counsel blatantly stated: "The General Assembly addressed the

issue of prisoner legal name changes when it abolished the common law right of a

prisoner to change his or her name. 10 Del C. § 5901. In accordance with the statutory

law, the Department instructed the staff to utilize the committed name and SBI number as

a point of reference or identification. (See Exhibit A)."

In the face of defendant counsel's own words how can she now truthfully claim

that the outright defiance of this court's lawful order was merely an error and that

defendants never retroactively applied § 5901 to Plaintiff.

Defendant counsel's

~~Plaintiff's~~ reversal of her own argument violates judicial estoppel and Rule 3.3

Candor toward the tribunal (Delaware Rules Annotated, Vol. II).

In Exhibit A, presented to this court by defendants' counsel, Treatment

Administrator Ronald G. Hosterman stated: "With the passage of the revised section

5901 of Title 10 Part IV Chapter 59, which abolished the common-law right of a prison

to change his/her name, the use of those arrangements [to change one's name] ceased,

and newer staff have been instructed to utilize the committed name and SBI number as a

point of reference or identification. That does not mean that there is never a use of a .

5

religious name in conversations with inmate or in written communication, but the general practice is to work with the committed name. Practices regarding adjustment of names following a court ordered name change are operated by the Department's central office. I have no knowledge or information that Amir Fatir has sought and was granted a legal name change with the Court of Common Pleas as is mandated by 10 Del C. § 5901. Nor do I have any information or knowledge that Amir Fatir has been disciplined or punished for using his assumed name."

Hosterman, a very high prison official, states unequivocally that § 5901 was applied retroactively to Plaintiff Fatir. To pretend otherwise is tantamount to an expectation that this court will gleefully take out a sub prime mortgage to purchase the Brooklyn Bridge.

Defendants' counsel wrote in her Sur-Reply: "On or about June 18, 1980, pursuant to the Court's Order, Defendants promulgated administrative regulation Section Number 1122-B. (see Regulations attached at Exh. D3-D4). In accordance with the Court's Order, these regulations, 'established procedures for use of Muslim names by inmates, delivery of mail and food services to Islamic inmates in all institutions that practice the Islam faith.' To date, there is no evidence that these regulations have been revoked or superseded."

In point of fact, defendants' own evidence and words prove that those regulations were completely revoked and superseded after the retroactive application of § 5901.

Defendants' continued to defy this court and ignore this court's lawful order until, at virtual judicial gunpoint, they blinked on February 11, 2008 and reluctantly re-issued a name tag in Plaintiff's legal Muslim name.

6

In light of defendants' defiance, obfuscation and attempts to bamboozle this court, sanctions should be applied to defendants and their counsel. It would not be outlandish to seek defendants' counsel's disbarment for her deliberate misrepresentations. This Plaintiff, however, would ask some leniency and only that she be sanctioned in some lesser manner to prevent such misconduct in the future.

Plaintiff Abdul-Haqq Shabazz (formerly Wilbur Johnson) remains on lockdown in Supermaximum SHU Unit for his refusal to call himself by his religiously offensive slave name. Defendants are still retroactively applying § 5901 to him and punishing him in outright defiance of this court's clear order.

On January 25, 2008 this Court order defendants to file a Sur-reply that shall address: whether a state statute enacted after the fact whose purpose is to contravene a federal court order is unconstitutional; whether 10 Del c. § 5901 applies retroactively; and whether the April 9, 1980 judgment (D.I. 75) is currently being enforced as to "II. With Respect to Plaintiffs' Name Claims."

Defendants danced around the first issue (the unconstitutionality of § 5901), claimed the second issue was not even occurring (retroactive application) and therefore, apparently, barely deserved a response and totally sidestepped responding to the third issue (Whether the court's order regarding names was being enforced). Instead of addressing the issues this court ordered them to address, defendants had the temerity to copy a regulation which is has not enforced since the passing of § 5901.

Having already addressed this court's first two concerns and defendants' less than candid Sur-Reply, Plaintiff, out of a deep respect for this court which seems to be

7

woefully lacking in state prosecutors and prison officials, will address the court's third issue.

Until the passage of § 5901 defendants complied with paragraphs 4, 5, 6, and 7. After § 5901 was passed, however, they ceased to comply with paragraphs 4, 5, and 6. Moreover, Plaintiff was told by the Chaplain Frank Pennell that defendants harbored resentment for having had to comply with paragraph 7, the paying of one dollar.

**EQUAL PROTECTION**

Defendants argue that Plaintiff's equal protection claim fails because "While similarly situated persons shall be treated alike, it does not demand 'that every religious sect or group within a prison however few in numbers must have identical facilities or personnel.'"

Other than Muslims who are of African descent, all other prisoners are referred to by their legal names. Plaintiff has an equal protection right to also be called by his legal name and for the three years that he was not, he suffered from defendants' violation of his Fourteenth Amendment right to equal protection.

**THE PORK ISSUE**

Defendants, again ignoring the court's clear order, have unilaterally decided they need not comply with the court's order because they claim they no longer purchase pork products.

Defendants have failed to file a Rule 60 ) motion to seek relief from compliance and that would be the only lawful way they could cease to comply. They seem to think they are omnipotent in themselves and can just decide to not comply because, in their narrow view, pork contamination is no longer an issue.

8

Yet it remains an issue, a very large and significant one. Defendants should be pleased to have Plaintiffs eager and willing to inspect for pork because this is such a major issue with Muslims that it is very possible, very likely, that some Muslims would explode if they found that, through negligence or deceit, they were fed pork when they'd been told by administrators that the prison was pork-free. If Muslims all over the world would react so virulently over cartoon pictures of the holy prophet, how might some react if they were fed pork or pork by-products by an unsympathetic and uncaring Christian administration?

The major problem which Judge Stapleton addressed was the lack of information and the lack of trust among Plaintiffs for the (false) assurances by DOC officials that food was not contaminated or co-mingled with pork.

Defendants have now outsourced the job of assuring that pork and pork by-products are not served to Muslims to meat-selling and meat-packing vendors and expect Muslims to be comfortable with that. The various vendors have a financial stake in selling meat to the prison and Muslims cannot trust a cardinal aspect of their faith to the vigilance of meat-workers in packing houses who may see nothing untoward about using floor scraps for sausages and hot dogs and other meats from some mixtures of beef, poultry and pork.

Defendants would have Plaintiffs place their trust in a serious matter of religion to non-Muslim meatpackers who are totally unknown to Plaintiffs. Plaintiffs have a right to know if non-pork means 100% non-pork or some other definition. Is the meat cut using the same equipment that pork is used upon? Is pork and beef ever co-mingled? Are pork by-products vigilantly kept outside of the food.

9

There are pork by-products such as glycerin and mono-triglicerides that are used in foods that a non-Muslim or non-Kosher Jew would not even think to look out for. Many gelatins are made from pigs' hooves. Even some Jello gelatin which bears the rabbinical kosher seal (a "U" in a circle or the French word parve) has been found to actually contain molecules from pigs' hooves. This may be "kosher" for the Union of Rabbinical Order" but it's not "halaal" (Islamic "kosher") for Muslims.

Some hotdogs and sausages are made in a transparent sheath made of pork while the meat itself is purportedly beef or chicken. Non-Muslim meatpacking vendors would not be on the alert for such contamination.

Some food preservatives are derived from pork by-products. Defendants have not taken these serious issues into consideration in their cavalier unilateral decision to disregard the court's order that inspection of food preparation and food labels be granted on a regular basis to "the individual Plaintiffs."

In fact, defendants should be looking to expand the Plaintiffs' ability to inspect, perhaps taking any of them who have achieved outside/off-grounds status, to the meat packing places and vendors' warehouses to verify that all the products are pork-free.

For the above reasons, and for the reasons previously provided, Plaintiffs asks this honorable court to grant their motion to enforce the judgment, to find defendants in contempt of court, to sanction defendants' counsel or lack of veracity, to order Plaintiff Abdul-Haqq Haad Shabazz issued an identification in his Muslim name, to release him from SHU Supermax immediately, to expunge any disciplinary infractions related to his refusal to call himself "Wilbur Johnson," to order defendants to pay each Plaintiff

10

$1,000.00 in contempt fees, to order defendants to fully comply with the court's order

and to grant any and all addition relief which this court deems appropriate.

Respectfully submitted,

Amir Fatir # 137010
1181 Paddock Road
Smyrna, DE  19977

Date:    February 22, 2008

# Certificate of Service

I, Amir Fatir, hereby certify that I have served a true and correct copy(ies) of the attached          upon the following parties/persons:

To: Ophelia Waters, Esq.                          To:

    Dept. of Justice

    820 N. French St.

    Wilmington, DE  19801

To:                                               To:

To:                                               To:

BY PLACING IN A SEALED ENVELOPE, and depositing same in the United States Mail at the Delaware Correction Center, Smyrna, DE 19977.

On this 22nd day of February, 2008

Amir Fatir

SBI # 137010

# Attachment # 1

## DELAWARE CORRECTIONAL CENTER
### Office of Records Supervisor

# Memo

**To:**     **Amir Fatir SBI: 137010**

**From:**   Cindy Wright, Records Supervisor

**Date:**   7/17/2007

**Re:**     Court Order Name Change

I am in receipt of the letter that you had sent to Ms. Burris.

I would be happy to make arrangements to have your ID, building listing and visiting list changed to

Amir Fatir. However I wasn't able to locate the court order changing your name. Please forward this

order and I will make the necessary changes.

Thank you.

Cindy Wright

● Page 1



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE DEPUTY WARDEN**
DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6667

## MEMORANDUM

TO:         *Amir Fatir*
            Inmate Sterling Hobbs  SBI# 00137010   Unit D-East

FROM:       Deputy Warden Burris *Beuks*

DATE:       July 03, 2007

RE:         Inmate letter

---

Your letter dated April 24, 2007, has been forwarded to Legal Services Administrator
Little so he can respond to you as to the correct name being used.


Cc:  Legal Services Administrator Little



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
DELAWARE CORRECTIONAL CENTER
LEGAL SERVICES ADMINISTRATOR
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6667

## MEMORANDUM

To:     Sterling Hobbs AKA  Amir Fatir  # 137010
        Inmate

From:   Michael Little
        Legal Services Administrator

Date:   June 12, 2007

Re:     Your Letter dated April 24, 2007 Forwarded from Deputy Warden Burris


        I do not have authority on how name changes are handled by the Department of
Corrections. I suggest you contact Cindy Wright, DCC Records Supervisor or Cathy
Escherich, Director of Offender Records at central office in Dover.


C /c
Warden Carroll
Aaron Goldstein
Cindy Wright
Cathy Escherich
File



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE  F THE DEPUTY WARDEN**
DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6667

## MEMORANDUM

TO:          Amir Fatir
             Inmate Sterling Hobbs  SBI# 00137010  Unit D-East

FROM:        Deputy Warden Burris *Bperutio*

DATE:        July 03, 2007

RE:          Inmate letter

---

Your letter dated April 24, 2007, has been forwarded to Legal Services Administrator Little so he can respond to you as to the correct name being used.


Cc:  Legal Services Administrator Little

April 24, 2007

Dear Mrs. Burris:

Thank you for your 3/13/07 memo. I wrote requesting that you direct the appropriate officials to comply with the federal court order that my name, Amir Fatir, be acknowledged and used.

This right was secured in Masjid Muhammad-DCC, et. al., v. Keve, et al., 479 F.Supp. 1311 (case # 77-221).

I would request that my name be recognized on my I.D., building listing, visiting, etc. as was the case for nearly 30 years.

Thank you for your time and attention and I hope you are doing well.

Sincerely,

Amir Fatir

137010   D-East.

**RECEIVED**

APR 2 6 2007

**Deputy Warden II**

Amir Fatir # 137010
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977
July 18, 2007

Cathleen S. Trainer, Esq.
Senior Trial Attorney
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
PHB Room 5908
Washington, DC 20530

### RE: Delaware DOC Defiance of Federal Court Order

Dear Ms. Trainer:

I was a plaintiff in the case *Masjid Muhammad-DCC, et al. v. Paul Keve, et al.*, 479 F. Supp. 1311 (Civ. A. No. 77-221).

Judge Stapleton ordered the Department of Correction:

> The individual plaintiffs are entitled to injunctive relief
> which will assure their access to the information regarding
> the pork content of food served at D.C.C. which is available
> to the kitchen staff. In addition, they have established their
> right to have mail addressed to them solely in their Muslim
> names delivered as any other mail and their right to be free of
> the imposition of punishment of any kind as a result of their
> failure to use or acknowledge their non-Muslim names.
> Finally, each of the individual plaintiffs is entitled to have a
> judgment against Superintendent Redman entered in his favor
> in the amount of One Dollar. The Court will confer with the
> parties regarding an appropriate form of judgment.

I have been incarcerated in the custody of the Delaware Department of Correction without release since that order was entered.

Beginning on December 2, 2004, DOC stopped complying with the order and forced me to wear an identification badge in my former (non-Muslim) name. In addition, DOC has forced me to respond to and acknowledge the non-Muslim name on threat of punishment, loss of visit, loss of hospital treatment and loss of legal and personal mail.

One plaintiff, Abdul Haqq Haad (Wilbur) Shabazz was sent to SHU Supermax and has been held there for two years for refusing to acknowledge his non-Muslim name, which is a right he won in the above case.

In addition, there is no inspection or monitoring by plaintiffs to assure that the food we are served via the kitchen and commissary is pork-free.

I am hereby requesting the Department of Justice's assistance in forcing the Delaware Department of Correction to comply with the federal court order.

Thank you very much.

Very truly yours,

Amir Fatir

cc:    Commissioner Carl Danberg
       Warden Thomas Carroll
       Aaron Goldstein
       Cindy Wright
       Cathy Escherich

Amir Fatir # 137010
Shamsiddin Ali # 052590
1181 Paddock Road
Smyrna, DE  19977
February 15, 2008

Ophelia Waters, Esq.
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE  19801

## RE:  Masjid Muhammad – DCC v. Keve, et al. Civ. No. 77-221-SLR

Dear Ms. Waters:

Although the court's Final Judgment in the above case clearly stated that no plaintiff was to be punished for not responding to his non-Muslim name and was not required to carry passes or wear identification in the non-Muslim name, Plaintiff Abdul-Haqq Haad Shabazz (formerly Wilbur Johnson) was put in SHU Supermax for refusing to acknowledge his non-Muslim name and has been held there for going on three years.

Such a thing is unconscionable and a direction violation of the United States District Court's order.

We urge and implore you to direct your client, the Department of Correction, to expunge any adjustment board convictions Shabazz has suffered directly and indirectly related to the name issue, to immediately restore him to general population at a classification commiserate to what he has earned in nearly 33 years of incarceration, rehabilitation participation, program creation and coordination and advanced educational achievement.  It would seem appropriate and fair that Mr. Shabazz be placed in Minimum Security in either S/1 or W/1 as a show of good faith on the part of the Department of Correction.

In addition, Mr. Shabazz should be restored to his position as Imam of the DCC Muslim Community since he was the primary creator of that community and was the Imam and spiritual cultivator prior to his exile via forced Interstate Corrections Compact in 1981.  Under Imam Shabazz's leadership the type of financial corruption and theft that is currently damaging the community would not have occurred and would not be allowed

to occur.

Very truly yours,

Amir Fatir

Shamsiddin Ali
(Aka Robert Saunders)

I/M: Armir Fatir
SBI# 137010    UNIT: W5
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



U.S.M.S.
X-RAY



Clerk
U.S. District Court
844 King St., Lockbox 18
Wilmington, DE 19801