IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MASJID MUHAMMAD-DCC, et al., )
)
Plaintiffs, )
)
v. ) C.A. No. 77-221-SLR
)
KEVE, et al., )
)
Defendants. )

**SUPPLEMENT TO PLAINTIFF'S
REBUTTLE TO DEFENDANTS' SUR-REPLY**

Plaintiff Amir Fatir, pro se, submits this supplement to the previously submitted Plaintiff's Rebuttal to Defendants' Sur-Reply.

1. Plaintiff is a pro se litigant who is incarcerated at the Delaware Correctional Center.

2. Plaintiff can only research cases when he is scheduled to be in the prison law library.

3. Defendants based a portion of their argument upon *Anderson v. Redman*, 429 F. Supp. 1105.

4. Plaintiff has only now been able to read the *Anderson* case.

5. Defendants assert that the question of whether a state statute enacted after the fact whose purpose is to contravene a federal court order is unconstitutional arose in *Anderson*.

6. While there may be a similarity to *Anderson* on the surface, the instant case is distinguished from *Anderson* because *Anderson* was decided based solely upon state law

while *Masjid Muhammad-DCC v. Keve* was decided based upon the First Amendment to the United States Constitution.

7. When a case against state officials is presented in the federal court alleging violations by the State of its own laws, the federal judge must first determine if the state has violated its own state laws. If the judge so determines he or she will not even attempt to reach a decision on the question of Constitutional violations, but will rule based upon state law.

8. Although there is no doubt that the Delaware Correctional Center ("DCC") was in violation of the Eighth Amendment to the United States Constitution, Judge Murray M. Schwartz did not rule on the Constitutional violations since DCC was very obviously and admittedly in violation of its own rules, policies, laws and regulations.

> The foregoing violations all have been predicated upon nonfederal grounds, either Delaware statutes or the IRM. This is in no way intended to imply that plaintiffs failed to demonstrate federal constitutional violations. Rather, it represents adherence to the general rule that "if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

> The Supreme Court affirmed the importance of this principle in Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1973) in which it read Siler v. Louisville & Nashville R.Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909), to hold "that the state issues should be decided first and because these claims were dispositive, federal questions need not be reached." Hagans, supra, 415 U.S. at 546, 94 S.Ct. at 1383. It is therefore clear "a federal court properly vested with jurisdiction may pass on the state or local law question without deciding the federal constitutional issues" and may then "dispose of the case solely on the nonfederal ground." Id. At 547, n. 12, 94 S.Ct. at 1384. *Anderson v. Redman*, 429 F.Supp. 1105, 1122-1123.

9. After Judge Schwartz ruled on the case based upon state law – having received all manner of assurances by the state that they wanted a ruling that would force them to comply "supplied with the protective succor and warmth of a federal court order," *Anderson*, supra, at 1123, the State did its infamous and now predictable reneging and passed a new law which vacated the previous law upon which *Anderson* had been based.

10. Although the Court wrote wisely and confidently about the "careful balancing of the desirability of minimizing federal intrusion into what is essentially a State matter against avoidance of judicial timidity in the face of gross and continuing violations which

3

State officials seemingly are unable to correct," *Anderson* at 1123, ultimately, when it counted, the Court succumbed and, sadly, demonstrated the very "judicial timidity" it sought to avoid.

11. When Delaware eviscerated the statutes upon which the Court had relied, the Court – in enforcing its order under the Supremacy Clause and the All Writs Act – should have restrained the State from violating its order and – with all the trial evidence still fresh – reached a decision based upon the Constitution which, in its own words, the Court had "in no way intended to imply that plaintiffs failed to demonstrate federal constitutional violations."

12. Judge Schwartz let them off the hook while fully aware that the State was in gross violation of Constitutional prohibitions and State laws. This was a very sad day in the history of the United States District Court for the District of Delaware, "a day," to quote President Roosevelt, "that shall live in infamy."

13. Judge Schwartz had been nominated to rise to the lofty heights of the United States Third Circuit of Court Appeals -- one would imagine with the blessing of Senators Roth and Biden where he would be out of the hair of Delaware State officials – and thus showed no taste for re-engaging the good old boys who ran the prison system.

14. The lawyers who purportedly represented prisoners' interests seem also to have "made their bones" and offered little more than perfunctory resistance to the State's legislative coup d'etat on the federal court.

15. Since Judge Stapleton did not base his ruling in *Masjid Muhammad* on state law, the State is prohibited from pulling the same type of David Copperfield disappearing magic with the statute in the instant case that they got away with in the *Anderson* case.

4

16. Defendants also claim that forcing Plaintiff Fatir to wear an I.D., carry passes, and respond to in his offensive slave name, upon threat of lockdown and loss of privilege was merely an error. Yet a review of the prison's own records will show that all of the Muslims who had changed their name pursuant to this Court's ruling in the instant case had their names reverted to their slave names upon passage of 10 Del. C. § 5901.

17. Dawud Muhammad (David Hunter), Amin Faazil Al-Amin (John Howard), Abdel-Rafi Ahmad (Jesse Bryant), Abdul-Haqq Haad Shabazz (Wilbur Johnson), Rashid Ali, and Nasir Uhuru (Floyd Fields) are among the many Muslims who'd changed their names only to have the Department of Correction retroactively apply 10 Del. C. § 5901 to them.

18. Defendants would have this court accept their ridiculous assertion that 10 Del. C. § 5901 was never applied retroactively in the face of overwhelming evidence to the contrary. One would have to believe that the identical error was made upon each person and that no one recognized it despite vociferous protestations by nearly all of them.

19. Rashid Ali was among the people who were forced to go to Common Pleas Court to get the prison to re-recognize his Muslim name.

20. Defendants also claim that plaintiff was never denied mail that was addressed to him in his Muslim name. Plaintiff asserts that he has personal knowledge that letters addressed to him by Mary Cunningham, Carolyn Chappell and Helen Fatir were returned to those people by the prison even though the envelopes bore his SBI #.

21. A W-Building correctional officer informed Plaintiff Fatir (just prior to defendants' re-issuance of his I.D. tag in his Muslim name) that a lieutenant had ordered

him to not give Fatir his mail since it was addressed to him as Fatir and not in his slave "committed" name. Plaintiff seeks to protect this officer under the Whistleblowers Act and will decline to provide his name to defendants out of certainty that the officer would face retaliation, but plaintiff will provide the officer's name to the Court if he can do so without also apprising the Attorney General of the State of Delaware and thereby the prison administration which has accumulated a long track record of retaliation.

22. Although the prison mail room **might** check mail by the SBI number, most building guards refuse to look up names by the SBI number if the name is not on the roster. Only the slave "committed" names are on the building roster. Thus, when mail arrived at W-Building from the mail room for Amir Fatir, officers had to ask who Fatir was since only his slave name appeared on the roster. Fatir has requested that guards look up names of Muslims who aren't on the roster and has been told, by guards, "I'm not wasting my time looking up some inmate's name on the computer."

23. Thus, defendants' assertion that **the mailroom** looks up names via the SBI number is misleading by omission. The process is not complete until and unless the **building officer** who sorts and distributes the mail also looks up the name via the SBI number, and that is seldom done.

24. Defendants plead that "Defendants are now in compliance making sanctions unnecessary."

25. Defendants are not now in compliance – they remain out of compliance on the entire pork judgment and regarding other plaintiffs and third party beneficiaries to this case regarding the name issue -- but even if they were, that would not eliminate the need for sanctions. In light of the State's propensity for recklessly disregarding federal

court orders, violating orders, and unconstitutionally changing laws to provide cover for disobeying federal court orders, it is necessary for this court to apply sanctions to discourage the state from such non-compliance in the future. Minus such sanctions the State will violate federal court orders again. That much is as unalterable as the law of gravity.

Dated: February 27, 2008

                                                                Respectfully submitted,

                                                                Amir Fatir # 137010
                                                                1181 Paddock Road
                                                                 Smyrna, DE 19977

## Certificate of Service

I, _Amir Fatir_, hereby certify that I have served a true And correct cop(ies) of the attached: _Supplement to Plaintiff's Rebuttal to Defendants' Sur-Reply_ upon the following parties/person (s):

TO: _Ophelia Waters, Esq._
_Dept. of Justice_
_820 N. French St._
_Wilm., DE 19801_

TO: _____

TO: _____

TO: _____

BY PLACING SAME IN A SEALED ENVELOPE, and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this _27th_ day of _Feb._, 200_8_

_Amir Fatir_

Amir Fatir #137060
1181 Paddock Rd.
Smyrna, DE 19977

Legal Mail

Clerk
U.S. District Court
District of Delaware
844 King St., Lockbox 18
Wilmington, DE 19801