IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MASJID MUHAMMAD-DCC, et l., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 77-221-SLR |
| | ) |
| PAUL KEVE, et al., | ) |
| | ) |
| Defendants. | ) |

Amir Fatir, Delaware Correctional Center, Smyrna, Delaware, pro se litigant.

Ophelia Michelle Waters, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Department of Correction Administrators.

**MEMORANDUM OPINION**

Dated: March 5, 2008
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On June 14, 1977, several Muslim inmates filed this civil rights action alleging violations of their First Amendment right to hold religious beliefs. (D.I. 2) The case proceeded to trial and on April 9, 1980, judgment was entered on behalf of plaintiffs. (D.I. 75) Nearly thirty years later, on August 13, 2007, Amir Fatir ("Fatir"), proceeding pro se, filed the pending motion to enforce the judgment. (D.I. 96) Current Delaware Department of Correction ("DOC") administrators[1] responded and asked that the motion be denied. For the reasons set forth below, the court will deny the motion.

## II. BACKGROUND

Eight plaintiffs filed the original complaint: Masjid Muhammad-D.C.C., the Mosque of the World Community of Al-Islam in the West at the Delaware Correctional Center ("D.C.C.") in Smyrna, Delaware ("the Mosque"); Wilbur Shabazz ("Shabazz"); Lionel Clayton a/k/a Muhammad Ali ("Clayton/Ali"); Rauf Muhammad ("Muhammad"); Louis Gardner a/k/a Mumin Rahim ("Gardner/Rahim"); Amir Fatir ("Fatir"); Robert Saunders a/k/a Shamsiddin Ali ("Saunders/Ali"); and Amin Hassan ("Hassan"). (D.I. 2) On October 27, 1977, the court entered an order dismissing with prejudice the claims asserted by Saunders/Ali following receipt of his motion to dismiss said claims. (D.I. 18) On February 13, 1979, Fatir and counsel for defendants executed a stipulation of

---

[1]DOC administrators advise that none of the defendants in the original case are presently employed by the DOC. There was no available information for defendants Paul Keve and Raymond Anderson. Defendants John Sullivan and George Pippin retired from the DOC on July 1, 1987 and August 1, 2000, respectively; and defendants Walter Redman and Phyllis Patterson are deceased. (D.I. 109 n.1)

dismissal of Fatir's claims.[2] (D.I. 69) The stipulation provided that Fatir's claims for compensatory and punitive damages were dismissed with prejudice and his claims for injunctive and declaratory were dismissed without prejudice. (Id.)

Since Saunders/Ali and Fatir were dismissed from the case, in May and early June 1978, a bench trial commenced with the following plaintiffs: the Mosque, and five of its members, Shabazz, Muhammad, Hassan, Clayton/ Ali and Gardner/Rahim. On October 22, 1979, the court issued its opinion and found that: (1) the individual plaintiffs were entitled to injunctive relief to assure their access to the information regarding the pork content of food served at D.C.C. which is available to the kitchen staff; (2) plaintiffs established their right to have mail addressed to them solely in their Muslim names delivered as any other mail and their right to be free of the imposition of punishment of any kind as a result of their failure to use or acknowledge their non-Muslim names; and (3) each of the individual plaintiffs was entitled to have a judgment entered in his favor in the amount of one dollar. Masjid Muhammad-D.C.C. v. Keve, 479 F. Supp. 1311, 1328 (D. Del. 1979). Final judgment was entered on April 9, 1980.[3] (D.I. 75.)

Fatir's given name is Sterling Hobbs, but he has used his Muslim name for thirty years. (D.I. 105) Fatir, who has been incarcerated since 1975, was housed at a DOC institution and, in 1996, was transferred to Arizona. (D.I. Id.) He was transferred to Arizona under his Muslim name. While Fatir was incarcerated in Arizona, the Delaware

---

[2]Due to the age of this case, the court was required to retrieve the court file from the federal archive records center. The court attaches a copy of the 1979 stipulation of dismissal of claims of plaintiff Fatir found at D.I. 69 since it was not mentioned by any of the litigants, and it appears that they do not have a copy of the stipulation.

[3]The court attaches a copy of the 1980 final judgment.

legislature passed H.B. 585, Petition For Change of Name, which contained a specific section concerning incarcerated individuals. (10 Del. C. §5901 (c)). The law was changed specifically to affect incarcerated individuals and abrogated an incarcerated individual's common law right to change one's name. Following enactment of the law, incarcerated individuals under the supervision of the DOC may only change his or her name by petitioning the Court of Common Pleas. Upon Fatir's return and transfer to the DOC on December 2, 2004, the DOC insisted that he use his non-Muslim name. (D.I. 105)

On August 13, 2007, Fatir filed the pending motion to enforce judgment pursuant to Fed. R. Civ. P. 70. (D.I. 96.) Fatir asserts that, upon his return to the DOC, defendants forced him to wear identification in his "slave name" and to respond to the slave name under threat of punitive segregation. Fatir states that he advised records officer Cindy Wright ("Wright") of the problem and that an order had been entered regarding the issue. He asks the court to order defendants to fully comply with the court's order, to cease to force him to respond to his slave name or wear any identification in that name or to post that name on any public postings as originally ordered, and to provide mail to him in his Muslim name. He also asks the court to order defendants to allow him to inspect the labels of food provided in the kitchen and commissary as provided for in the court's order. Finally, Fatir asks the court to find defendants, including Wright, in contempt and to order payment to Fatir in the sum of five hundred dollars. Following entry of a briefing schedule, the litigants filed briefs in support of their respective positions. (D.I. 101-106, 109-110) The court specifically requested DOC administrators to address the following issues: whether a state statute

enacted after the fact whose purpose is to contravene a federal court order is unconstitutional; whether 10 Del. C. § 5901 applies retroactively; and whether the April 9, 1980 judgment (D.I. 75) is currently being enforced as to "II. With Respect to Plaintiffs' Name Claims." (D.I. 107)

### III. DISCUSSION

Fatir moves for enforcement pursuant to Fed. R. Civ. P. 70 and the All Writs Act, 28 U.S.C. § 1651(a). Rule 70 states in pertinent part: "If a judgment directs a party to . . . perform any . . . specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person . . . The court may also in proper cases adjudge the party in contempt." Fed. R. Civ. P. 70. The All Writs Act, in relevant part, provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "[C]ourts have interpreted [the All Writs Statute] as authorizing injunctions to protect and effectuate their judgments." In Reliance Securities Litigation, No. Civ. A. 99-858-JJF, 2003 WL 1943320 (D. Del. 2003) (citing Baker v. Gotz, 415 F. Supp. 1243, 1247 (D. Del. 1976) (collecting cases)).

As an initial matter, it appears that Fatir may not have standing to bring this motion.[4] While he was a plaintiff when the case was filed, he settled his claims as is apparent from the stipulation of dismissal of his claims. Fatir was not one of the remaining plaintiffs who went to trial. Nor was he awarded any injunctive or monetary

---

[4]Fed. R. Civ. P. 71, however, may allow him to enforce the judgment at issue.

relief.

Even assuming Fatir does have standing, the filings before the court indicate that there is compliance with the 1979 opinion and 1980 judgment. A few years following the 1980 judgment, the DOC changed its policy and no longer provides pork or pork by-products in any of its facilities or accepts any product that contains pork or pork extracts. (D.I. 103, Klein aff.) This means that the DOC food services provides a pork-free menu, thus eliminating the need to inspect the food. (Id.)

With regard to the use of Fatir's Muslim name, DOC administrators advise the court that an error was made when Fatir returned from Arizona. They explain that upon Fatir's return to the DOC in December 2004, the receiving officer entered him into the DOC's Delaware Automated Correctional System ("DACS"), the automated record keeping system, using his SBI number as identification. (D.I. 109, ex. D-1) The SBI number corresponded with Sterling Hobbs, Fatir's committed name and, from that time on, his identification card, as well as passes, reflected the committed name. DOC administrators advise that, since Fatir changed his committed name to a Muslim name prior to the enactment of 10 Del. C. § 5901, it will recognize the name change. (Id.) DOC administrators further advise that the matter was corrected as of February 11, 2008, when Fatir was issued a new identification card with his Muslim name and SBI number as indicated in DACS. Additionally, the information in DACS has been corrected to reflect "Amir Fatir." (Id.) DOC administrators advise that the DOC will continue to use Fatir's committed name (i.e., Sterling Hobbs) for administrative record keeping as its general practice is to work with an inmate's committed name. (D.I. D.I. 109, ex. D-1 101, ex. A)

Fatir avers that the DOC failed to deliver mail to him addressed to his Muslim name and that he has suffered loss of mail due to the action of the DOC. The DOC promulgated administrative regulation Section Number 1122-B which "established procedures for use of Muslim names by inmates, delivery of mail and food services to Islamic inmates in all institutions that practice the Islam faith." (D.I. 109, ex. D-3, D-4) Other than Fatir's affidavit stating, generally, that he has suffered loss of mail, there is no evidence that Fatir was denied any of his mail or that his mail was returned due to its being addressed in his Muslim name. Notably, inmate mail is identified first with the inmate SBI number and, then, by the inmate name. (D.I. 109, ex. D5-D6 ). No two inmates share the same SBI number. (Id.) The mailroom supervisor at Fatir's institution avers that the DOC has never refused to deliver mail to an inmate because of a name change, Muslim or otherwise, and he could not recall any incident when an inmate's mail was refused and returned because it was addressed to a Muslim name.

The foregoing demonstrates that DOC administrators are in compliance with the order at issue. DOC administrators admit that an error occurred upon Fatir's return to the DOC when they failed to recognize his Muslim name. That error, however, has been corrected. Fatir's other grounds for enforcement of the judgment are not borne out by the record.

## IV. CONCLUSION

Based upon the foregoing analysis, the court will deny Fatir's motion to enforce judgment and for sanctions. An appropriate order will issue.

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF DELAWARE

MASJID MUHAMMAD-DCC )
      Plaintiffs )
v. ) C. A. No. 77-221
PAUL KEVE, et al. )
      Defendants. )

### STIPULATION OF DISMISSAL OF CLAIMS OF PLAINTIFF FATIR

It is hereby stipulated that plaintiff Fatir's claims for compensatory and punitive damages in the above action are dismissed with prejudice.

It is further stipulated that plaintiff Fatir's claims for injunctive and declaratory relief are dismissed without prejudice.

_____
Amir Fatir
Pro se

_____
John A. Parkins, Jr.
Deputy Attorney General
Department of Justice
State Office Building
Wilmington, Delaware  19801

Attorney for Defendants

Date: 2/13/79

Ralph A Walter
My Commission Expires Jan. 22, 1981

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MASJID MUHAMMAD-D.C.C.,  :
WILBUR SHABAZZ, s/n Lionel  :
Clayton a/k/a Muhammad Ali,  :
RAUF MUHAMMAD, s/n Louis  :
Gardner, a/k/a Mumin Rahim,  :
AMIR FATIR, s/n Robert Saunders,  :
a/k/a Shamsiddin Ali, and  :
AMIN HASSAN,  :
                Plaintiffs,  :
      v.  :  Civil Action No. 77-221
PAUL KEVE, RAYMOND ANDERSON,  :
JOHN L. SULLIVAN, WALTER  :
REDMAN, GEORGE PIPPIN and  :
PHYLLIS PATTERSON,  :
                Defendants.  :



FINAL JUDGDMENT

THIS 9th day of April, 1980, IT IS ORDERED, ADJUDGED AND DECREED:

I. With Respect to Plaintiffs' Dietary Claims.

1. The defendants' undertaking to order no foods which contain pork or pork derivative, other than ham, bacon, pork chops and pork roast, (such unapproved foods being hereinafter referred to as "non-obvious pork foods"), for service to inmates at the Delaware Correctional Center ("D.C.C.") is approved, and defendants, and all those working under their direction and control, are ordered and directed (a) to stipulate in all contracts hereafter entered with vendors that non-obvious pork food will not be acceptable and will be returned, and (b) not to knowingly serve such food to plaintiffs.

2. Defendants shall notify in writing all persons having any responsibility with respect to the preparation of foods for inmate consumption at the D.C.C. that no pork or pork derivatives are to be added to foods in the cooking process.

3. Defendants shall permit an inmate selected by plaintiffs to read the labels of all foods obtained by the D.C.C. for service to inmates and to have access to all other information concerning the pork content of non-obvious pork foods of whose presence defendants may from time to time become aware. The

labeling aspect of this directive shall be accomplished, at defendants' option, either (a) by permitting the designated inmate to work in the kitchen under the same terms and conditions applicable to other inmates performing similar work and by allowing that designated inmate to inspect the labeling of all food reaching the kitchen, or (b) by permitting the designated inmate to inspect the labeling of all food in the warehouse and food storage areas on a weekly basis. If non-obvious pork foods are found, those foods shall immediately be segregated pending their return and the designated inmate shall be provided the opportunity to advise plaintiffs and defendants promptly of what he observed.

## II. With Respect to Plaintiffs' Name Claims.

4. Defendants shall revoke all policies prohibiting the use by plaintiffs of their Muslim names and shall remove all references thereto on bulletin boards, in training manuals, or in any other material designated to inform inmates or staff of present institution policy.

5. Defendants shall cause mail addressed to plaintiffs in their Muslim names to be processed in the same manner as mail addressed to them in their committed names. Defendants shall advise each person having any mail responsibility of this policy in writing.

6. Defendants shall establish an institution-wide policy that no plaintiff shall be (a) compelled to respond to any order, correspondence, or the like, issued to him using his non-Muslim name, or (b) required to acknowledge his non-Muslim name in order to secure access to parts of the facilities or to obtain any other privilege or benefit (plaintiffs shall not, for example, be required to carry and produce passes made out in their non-Muslim names), or (c) punished as a result of his failure to use or to acknowledge his non-Muslim name. Defendants shall give written notice of this policy (a) in a conspicuous place in each building of the institution used to house inmates, (b) on each bulletin board utilized for communicating with staff and (c) in each manual used for the education of staff regarding institution policy. Within thirty days of the date of this Order defendants shall file with the Court copies of each notice given along with a list of the placements of each notice. After said thirty day period defendants shall cause any complaints of specific violations of this policy by individual staff members to be investigated, processed and acted upon in the same manner as complaints concerning other violations of institution policy.

7. Defendant Redman, in his individual capacity, shall pay each of

the plaintiffs One Dollar in nominal damages.

III. With Respect to Both Claims.

8. Defendants shall cause a system to be instituted immediately having the following characteristics:

(a) There will at all times be a D.C.C. staff member designated in writing by the Superintendent to be responsible for the implementation of this Order, whose name shall be supplied to plaintiffs in writing.

(b) If non-obvious pork food is detected, if any member of the staff is charged by plaintiffs with repeated and intentional violation of the name policy established pursuant to this Order, or if there is any other disagreement about the meaning or effect of this Order or the adequacy of its implementation by the institution, the defendants or the designated staff member shall meet with plaintiffs within ten days of notice thereof and a good faith effort shall be made to ascertain the true facts and to agree upon a resolution of the situation. This Court retains jurisdiction of this case, but no application for a contempt citation, for a modification of the terms of this Order, or for any other relief shall be entertained unless the applicant has notified the other parties concerned and offered to meet with them in an effort to resolve the problem which occasions the application.

_____
United States District Judge